case number 19-6411 Richard Clemons v. John Couch oral argument not to exceed 15 minutes per side Ms. Baxter for the appellant when ready. Thank you may it please the court and Mr. Combs my name is Bethany Baxter and I represent the appellant Richard Clemons in this case. I'd like to reserve two minutes for rebuttal please. Very well. Thank you. This is an appeal of the trial court's grant of summary judgment in favor of trooper John Couch who's with the Kentucky State Police. Summary judgment was granted on count one which was a 1983 claim for warrantless search of my client's home by trooper Couch when he entered my client's home and remained there after my client had revoked consent on Easter Sunday in 2016. It's important to have in mind why did trooper Couch go to my client's home that evening. He didn't have a search warrant. He didn't have an arrest warrant. He didn't have any court order which is an important fact in this case. He didn't have any reason to believe that any crime was being committed there. He didn't have any reason to believe that anyone in that home was injured or in need of any kind of emergency aid and finally he had no reason to believe that the Clemons home or anybody inside of it were causing any kind of public disturbance or nuisance harm to the community at large. There was no legal basis to make a warrantless search of the Clemons home and there was no basis for trooper Couch to remain in his home after he was asked to leave. While it may be true that law enforcement officers are asked to wear many hats in the course of performing their duties within a community  So why did Christina want to go to the Clemons home that night? She wanted to go get her clothes and she wanted her backpack. Any reasonable officer in trooper Couch's position would have recognized that that's not the kind of situation that demanded immediate action. There was no emergency here and if Clemons refused to give Christina her things back she had other recourse. What could she have done? She could have knocked on the door, asked for her things back. She didn't do that. Importantly the other thing she could have done was gone down to the Perry County Courthouse. There was a divorce proceeding pending at this time. She could have gotten relief from the judge overseeing that divorce proceeding. She could have filed a small claims action. It's important to note also that in Kentucky there are judges that are on call in every circuit 24 hours a day and they're there to deal with domestic violence situations. If this was that kind of situation trooper Couch could have gone to get some sort of domestic violence order and if appropriate that order could have been entered. Those would all have been the proper course of things that could have been done. What is the procedure in Kentucky? I'm a little, I'm from Kentucky, I probably should know this, but what should Couch have done? You say he should have gone to court to get some sort of an order? If he felt like, I guess what I'm getting at there is that the community caretaking exception is there to apply to situations when there's some sort of immediate need for action. Christina Clemons wanting to go get her clothes, that wasn't the kind of situation that had the kind of immediacy that that exception mandated. So is it your position that trooper Couch should have just said can't help you when she came to ask for his assistance? I think trooper Couch should have known that this was the kind of situation that a person in his position shouldn't interject themselves into. What trooper Couch did was he interjected himself into this familial matter. He took Christina's side and he really allowed Christina to circumvent the process that is established to protect not only the safety of someone like Christina or someone like the Clemons and his family, but also to protect law enforcement. You know, warrants and orders are important because they command the respect of the citizenry. That was something that the framers of the fourth amendment were very concerned about. The framers were clear that a search is unreasonable unless a warrant authorizes it, barring only exceptions justified by absolute... Well, trooper Couch was not going there to search for evidence of a crime. Trooper Couch was going there to allow the woman, the claimant, to get her things, right? Correct. So I'm just a little confused. Couch, is your answer Couch really couldn't do anything for her? I mean, he couldn't go to court to get an order to search the home because he wasn't searching for any evidence of a crime, was he? No, not to my knowledge. What I'm saying is the community... So he really had no ability to do anything for her. I think that's your position, isn't it? What I'm getting at is that he had no authority to enter my client's home and remain there after my client objected to his presence. There was no... He could have accompanied her there and waited outside, basically? I think that would have been... And if he heard something or whatever, he could have run inside, I guess, under some exigent circumstance? I agree with that analysis, Judge Navian. But you're saying that under the community caretaker exception, he was not permitted to go inside? Correct. And that's clearly established in the case law of this jurisdiction. There's two kind of avenues for the community caretaking exception to apply. One is where there's reason to believe that someone within that home has been injured or there's some threat of imminent injury to a person, an occupant of that home, or it's a situation where there's some sort of public disturbance, nuisance, harm to the community at large. This was not that type of situation. This is one individual person's desire to get her stuff weighed against the very important, as this court has said, sacrosanct interest in the privacy of one's home. I wanted to point... Is that clearly established, though? I mean, we know... So there's a cert petition pending in the Supreme Court right now on the community caretaker exception in the home from the First Circuit. And the Fifth Circuit, I know, United States versus York, they basically said in this exact situation, right, that it was okay to go to watch somebody get their belongings. We had allowed... Roehrig or whatever, generally, okay, seems to be an exigent circumstance case, but it does allow the officer to go into the home. Is it clearly established that he couldn't do this? Yes, Your Honor, it is. Roehrig was really not an exigent circumstance, I guess, in the way I think of an exigent circumstance situation. That was a situation where the court said, there's this group of pajama-clad neighbors, irate, three in the morning. There was noise emanating from that house. And in that case, the court said, here, the privacy interest is outweighed by that harm to the community at large. Let me ask you a broader question. Is it only our law that matters? I mean, if there's a circuit split on this issue, why is it by de facto not clearly established? Or do we only look at Williams, Washington, Roehrig, whatever, and say, hey, those are only immediacy cases. In this circuit, you can't do this. It's the latter, Your Honor. It's the case law of this jurisdiction. I would point out too, this circuit has gone, I would say, a few steps further than some other circuits have decided to do. But even by this circuit's clearly established law, this is a bridge too far. To affirm the trial court's order in this case would, in effect, be rubber stamping the very kind of unchecked discretion of government officials that the Fourth Amendment was designed to protect against. There was no need for immediacy. There was no emergency in this situation. There was no reason for Trooper Couch to go into my client's home on the basis of an individual person wanting to collect their things. I want to talk also about the issue of consent. Any consent that Trooper Couch had authorizing him to enter that home was clearly revoked, and it was revoked by my client at the earliest opportunity he had to do so. One of the issues before the court is this question of apparent authority. I do not concede that it was objectively reasonable for Trooper Couch to believe that Christina had any kind of apparent authority, but I'm just going to leave that issue to the briefs. I know the court's been at it for a while today, and I think that issue's been extensively briefed. The point I want to make is even if this court were to find that she had apparent authority, that authority was revoked, and the law is abundantly clear that upon revocation, the search should terminate instantly, and an officer should promptly depart the premises. Now, the question then becomes, after my client revoked that consent, was there any other basis that Trooper Couch had for remaining in that home? The answer is no. The information that he had before he walked through that door and the information he had available to him the second after that consent was revoked was the same. There was a desire of an individual person to reclaim her clothes, and the irony of this case or the danger of this case is that it was Trooper Couch's own refusal to follow that clearly his presence. That's what caused this whole situation to escalate. Where was Trooper Couch when your client revoked the consent? Where was he in the home? Sure. He was sitting where he was when they knocked on the door, which was in his recliner flipping through channels on television. Now, where was Trooper Couch? Oh. So there's sort of a little foyer, but Trooper Couch knocked on the door, walked through the door, and then about 10 seconds later, my client looks over and sees Trooper Couch with Christina and her mother-in-law standing in his living room. So that's where... Okay. So he was in the living room when the consent was revoked by your client, and at that point, is that when your client then called him a name or said something that led to the altercation? Yeah. That's a very important point, Your Honor. So during this time period, this initial time period when Trooper Couch, Christina, and her mother-in-law entered the home, Trooper Couch described my client as being irritated, but not disorderly. And the reason my client was irritated is because he was telling Trooper Couch, I don't want these women in my house. I don't want you in my house. I don't think you have a right to be here. Can you just barge in my house like this? Do you have any sort of So it was Trooper Couch himself that caused this entire situation to escalate. I want to make one more point before I run out of time. The trial court likened... As far as qualified immunity goes, I submit that the law is clear on both the community caretaking exception and the question of consent. The trial court in deciding the qualified immunity applied cited this court's case of Thomas versus Cohen. That was a civil standby situation. And that case, if anything, supports my contention, which is that what should have happened here is she should have gone to get some sort of order or authority, authorizing her to get her stuff if the Clemons weren't going to give it back to her. That case talks about a lawful statutory repossession, and it talks about officers acting in a civil standby capacity pursuant to a judicial order. That was not this case. There was no judicial order, and I submit if there had been, the situation would not have escalated and would not have taken the turn that it did. So Couch, without the benefit of a court order, sided with Christina, interjected himself into the situation and caused the situation to escalate. Okay. Thank you, Ms. Baxter. Mr. Combs. May it please the court and Ms. Baxter. The appellant's briefs and arguments have concentrated primarily on the substance of this Fourth Amendment search issue. And I don't think either of us have really said anything about that issue that the district court hasn't covered in the memorandum of opinions at record entries 61 and 80. So I want to begin by talking about the qualified immunity issue, because qualified immunity is, in my opinion, dispositive of the appeal, regardless of which direction the court goes on the community care section. Our position is that it doesn't matter whether we now conclude in hindsight that Trooper Couch entering or remaining in the Clemens House did or did not violate the Fourth Amendment, because Trooper Couch is entitled to qualified immunity either way. So the district court said that even if the community caretaking exception did not apply, the law was not sufficiently clear that it would not apply, which means that Trooper Couch would be entitled to qualified immunity. The appellants quoted Anderson versus Creighton, and they said that for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, which is to say that in the light of pre-existing law, the unlawfulness must be the fact that the owner of the home tells this officer, I don't know what he would have thought would justify staying in light of the homeowner saying, get out of my house. So right then, he seems to, I mean, in keeping with the argument of your learned colleague, right then he knows, well, I guess, I mean, whatever permission I get from her has now been overcome. What would give this officer the idea that he's justified in remaining? I'm thinking if he's debating it, what leads the other half of that debate? Your honor, jumping over kind of, I guess, to the fourth amendment issue. And of course, the district court did say that. I'm talking about qualified immunity. That's what you're addressing, right? Yes, your honor. I may have misunderstood the question. I thought you were asking what legal authority would allow him to stay after Mr. Clemens told him to leave. You said it would be, he would not understand that the, I guess, the community caretaking exception would or would not apply. He would be debating that in his mind and that's why he's okay to stay in the house. Is that your argument? I believe, yes, your honor. We have a situation where this is two days after Christina Clemens has been in a fight with her mother-in-law. He's there in the house. The mother-in-law and father-in-law are both irritated. And of course, there are differences in the various witnesses' stories about what he was saying, but he's at least irritated. And she's in the next room gathering up her clothes. So at that point, I don't believe that any police officer would have walked out of the house without her. And that's what we've heard that Trooper Couch told Mr. Clemens, that we'll leave as soon as she gets back out here with her stuff. I guess I'm struggling with the clearly established question. I don't understand. I mean, the cases in our circuit that had arguably recognized a community caretaker exception for the home, to enter a home, all of them have involved or at least characterized the exception as basically a sub part of the exigent circumstances in my mind. And none of that was true here. So how would he have not known that you need a warrant to go in this house? Well, I guess what I was saying was that at that point, exigent circumstances would apply. But as far as what this court has said about community caretaking before, and my opinion was that the Sixth Circuit has leaned toward making community caretaking a the other circuits that have gone more along the lines of, well, the police aren't enforcing the law here. But even in this circuit, we look at United States versus Roehrig. That's a case where the danger there is nothing but a loud music complaint. And then in that case, you cited State versus Dew. So looking at State versus Dew, that's the 655 Atlantic 2nd 338. In that case, the harm was a water leak. And the custodian of this apartment building called the police to come in, not even because of a water leak that might have damaged the property, but because he wanted a witness to go into the apartment with him to show that he wasn't there for an improper purpose. So if the Sixth Circuit is signing cases where it's okay for the police to go in just to be a witness for this, this landlord or custodian, then that certainly implies that where this woman has been thrown out of the house with nothing but the clothes on her back, the police could go in with her to get her clothes. Yeah, but didn't we reject that that theory of the, I mean, you mentioned the water leak, that was the theory that we rejected in Williams, wasn't it? Williams or Washington, one of those two cases is, is about a landlord saying, you know, hey, and she even suspected there was some something going on. And when that we didn't allow the the exception there, did we? I think maybe that was Washington, Your Honor. And you're that take two different approaches. In one case, we're approving letting the police go in just to be a witness for for a custodian. And in another case, we're saying no, that's not enough. It is a very confusing issue. And the point is, you know, we're trying to determine whether the law was so clearly established that trooper couch in the middle of a tense situation in Hazard, Kentucky, March 27 2016, should have understood that entering or remaining in this house would violate Mr. Clemens Fourth Amendment rights. Yet here we are arguing about it because the appellant claims that a magistrate judge being fully briefed by both sides with the time to do legal research. And actually, after two written opinions on this subject said that trooper couch was right. So we're saying that the law was not so clearly established that the district court could figure it out. But a state trooper standing in the middle of Mr. couch's living room was supposed to be able to pull that out of thin air. I don't think that's realistic when we're talking about whether the right was clearly established or whether the law was clearly established. So I really think that's that's addressed what I had to say. That's our major point on qualified immunity. If the magistrate judge with all of this legal briefing, the written summary judgment motion response reply, the time that was spent to research it in two legal opinions got this issue wrong. How was trooper john couch supposed to understand that the law in the Sixth Circuit required him to do something different than what magistrate judge said he should do. So on the Fourth Amendment issue, I think we really addressed what I wanted to address on that. I think there were two factual parts of the entry into the home and remaining in the home. And we kind of jumped ahead there and said all I wanted to say about that. I think that it was reasonable for trooper couch to believe that Christina Clemens had apparent authority. The appellate theory here has been that she somehow lost the right to go back into this house and pick up her clothes, even though this was her only residence. This is where she had been living with her husband and son for months. I don't remember exactly how many. But this this was her home Friday night she's thrown out. And of course, the exact amount of property does it really matter? Does it really matter whether she has apparent authority or not? Because aren't you I mean, are you are you disputing that that Richard Clemens revoked his consent? No, I'm not. OK, so why does it matter whether she had apparent authority or not? Well, there are two issues. There's the entry into the house. So she had the magistrate judge found that she had either actual or apparent authority. And then, like I said, when Mr. Clemens revoked his consent, which we don't dispute that he said that when he revoked his consent, she's then in the other room gathering up her clothes. And no police officer is going to walk out of that house and leave her there with two angry people that two days before she's in a fight with. I'm not sure if it was in the record at this point that it was an actual physical fight or either way she's in a fight or an argument. I don't believe anybody would maybe maybe counsel you're making the argument that it becomes exigent circumstances at that point where she's in the house and tensions are high. Is is that would that be what you're that that is that is correct. That's what I'm saying, Your Honor, that at that point, once he's in the house, the tensions are high and she's not right there in the same room with him where he can grab her and they can leave. So he tells Mr. Clemens as soon as she gets her stuff, we're leaving. At this point, there had already been some dispute between Mr. Clemens and her mother. I think she had already been sent back to her car. But I believe that that at that point, exigent circumstances does come into play because a police officer is not going to leave when there's clearly a danger to a person in the residence. So I think community caretaking probably relates more to the initial entry and up to that point. But at some point here, it crosses over into the classic exigent circumstances and the risk of harm to a person in the residence. Did you argue that to the district court about exigent circumstances arising at that point when Mr. Clemens or Richard Clemens revoked consent? I'm not sure that that argument was was clearly made at that point. I believe there was some citation about exigent circumstances. And unfortunately, I didn't get involved in this case until the trial. I didn't work for the state police at that point. So I'm a little sketchy on some of the record prior to that, not having been involved in it at the time. So I'm not perfectly clear on that, Your Honor. Thank you. And I have a couple of minutes left, but I think that really concludes what I had to say about the case, unless the court has more questions. I don't think so. Thank you, Mr. Combs. Ms. Baxter. All right. Yeah. The timing of this is really important, and I want to make sure that's clear for the court. My client revoked consent at the earliest opportunity he had to do so. These guys didn't knock on the door and wait for my client to come to the door and figure out who they were and what they were there to do. They knocked on the door and then they just let themselves right into the house. And after my client asked them what they were there to do, and Trooper Couch told them, Christina's here to get her stuff. My client said, wait a minute. I don't want these women in my house. I don't want you in my house. I don't think you have a right to be here. At that point, my client was irritated. He's irritated because he'd asked law enforcement to leave, and they refused to respect or to do what the law clearly requires them to do, which is to leave the house at that point. And that's crystal clear in the law ever since Georgia versus Randolph was decided, and this court has upheld, ruled consistent with that case time and again. An important case that was not in the briefs, but I've came across in preparing for this was U.S. versus Chapman. That case, I believe, is helpful and consistent with my argument. So this idea that there was some sort of exigent circumstance or emergency created after Trooper Couch entered my client's home, that was entirely the result of Trooper Couch's own actions and behavior. And the emergency aid doctrine, exigent circumstances, that cannot be used to justify a warrantless search or seizure if the emergency is created by the government official. And that's what happened here. It's clear from the record my client was irritated because this trooper was in his house, not necessarily because Christina wanted to get her stuff. So again, this is not the sort of situation that has the immediacy and the need for immediate action that the community caretaking exception excuses or justifies. There was no need for immediate action. Her desire to get her stuff in no way outweighed my client's privacy interest at his home. Thank you, Ms. Baxter. Thank you, counsel. Both sides will take the case under submission.